# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v. § | CASE NUMBER 1:25-CR-49-MAC |
| § | |
| § | |
| § | |
| CHARLES TERRANCE LEAVEN § | |

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Pending before the undersigned is the Defendant's Motion to Suppress (doc. #19) filed by the Defendant, Charles Terrance Leaven. This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and E.D. Tex. Local R. CR-59(a). The United States filed a response to the Defendant's motion[1] (doc. #29), and the Defendant filed a reply[2] (doc. #32). The undersigned magistrate judge heard testimony and oral argument on December 9, 2025.

### I. RELEVANT FACTS

At the suppression hearing, Officer Andrew Allen and Detective Jeffery Busby testified. The Government also presented evidence of the body camera video footage from the officers at the scene. The testimony and evidence presented shows that on March 11, 2024, at 1:03 a.m.,

---

[1] At the suppression hearing, the Government argued that the Defendant's motion failed to sufficiently discuss the issues and facts to give notice to the Government enabling it to adequately respond. The court disagrees with this position and finds the Defendant's motion adequately points out the legal issues, facts, and evidence sought to be suppressed. The court, therefore, denies the Government's oral motion to strike the Defendant's motion on that basis.

[2] In a separate order, the undersigned struck pages 11-17 of the Reply for exceeding the page limit without leave of court.

the Defendant made a 911 call stating that he was stuck in the back of his Dodge Ram truck with his ex-girlfriend (Britanny Balka) driving and he needed help.  He told the operator to send officers to the intersection of Sherman and Hemlock.  Once Officer Allen arrived near that location, the Defendant and Balka were back at the Defendant's home on Hemlock Street.  The Defendant was standing outside of the house near a side entrance and Balka was just inside the home behind a screen door, which she opened once Officer Allen neared their location.

     Officer Allen testified that the situation was called in as domestic disturbance.  The Defendant told Officer Allen that he was trying to get in the house and Balka would not allow him to enter even though she did not live there.  Balka told the officer that they got into an altercation, and he cut her hair and broke her nails, and she had visible blood on her hands.  Officer Allen asked them to speak one at a time and attempted to separate them by asking the Defendant to move over next to his partner.  The Defendant stated that he was not moving.  Balka stated that the Defendant assaulted her, and the officers again tried to move the parties further away from each other to hear each side of the story.  Eventually, after asking the Defendant five times to step closer to his partner away from the home and the Defendant refusing each time, Officer Allen walked towards Balka, who was still in the side door entry to the house with the screen door open and said, "let's walk inside" to which Balka replied, "go ahead."  The Defendant did not object to the officer's entry into the home, but he stated, "ya'll going in my house though."  Officer Sikes asked if Balka lived with him and the Defendant stated, "she just my girl."

     Once Officer Allen was in the kitchen of the home with Balka, she stated again that the Defendant assaulted her and that he sold drugs.  She began to open cabinets and the stove to show him where the Defendant stashed drugs—weed and pills. Officer Allen observed marijuana

2

and paraphernalia but told her to hold on and to relax and stop reaching for things. She then stated her name and showed him the injuries to her lip, hair pulled out, broken nails, and bloody hands. She told the officer that she had gone through his phone, and they started arguing and fought in the front yard. She stated that he took her keys and threw them, so she took his keys and got into his truck then pulled over once he called 911 and decided to wait for the officers to arrive.

Officer Allen testified that the Defendant was the primary aggressor for the domestic disturbance and he was arrested for Assault Family Violence. Officer Allen also stated that while in the kitchen, he saw, in plain view, jars with marijuana in them on the table and the silhouette of a marijuana plant with a heat lamp on it through a sheet dividing the kitchen from another room. Based on these observations and Balka's statements that the Defendant distributes drugs, he called Sergeant Simpson who then called Narcotics Detective Jeffery Busby to the scene to assess the situation.

Det. Busby testified that he spoke with Balka and entered the kitchen to see what Officer Allen had previously observed. Det. Busby confirmed Officer Allen's observations regarding the three-foot marijuana plant silhouette and jars of marijuana along with the marijuana visible from the open cabinets and stove. He also obtained a witness statement from Balka to support his application for a search warrant to search the home. In the statement, Balka advised that the Defendant distributes marijuana, Xanax, and Fentanyl from his home and truck. An application for a search warrant was submitted at 4:20 a.m. and a subsequent search of the home occurred around 5:00 a.m., which revealed marijuana, pills, ledgers, guns (including an AK47), and ammunition.

## II. ISSUES PRESENTED

The Defendant argues that the initial entry into his home was unjustified and a violation of his Fourth Amendment rights as it was without his consent, without a warrant, and without an exception to the warrant requirement. Therefore, the Defendant requests that the court suppress all evidence seized as a result of the unlawful entry and any subsequent search and seizure as tainted under the exclusionary rule.

The Government responds that no Fourth Amendment violation occurred as there was an exception allowing legal entry into the Defendant's home due to the ongoing domestic disturbance. They also assert that the officers saw illegal items in plain view. The Government further alleges that the initial entry provided probable cause for a warrant to search the home and lawfully seize evidence found in the home.

## III. RELEVANT LAW AND DISCUSSION

The Fourth Amendment protects individuals from unreasonable searches and seizures. It is well-settled law that warrantless entry into a home for the purpose of either arrest or search is prohibited by the Fourth Amendment unless there is an exception. *Welsh v. Wisconsin,* 466 U.S. 740 (1984); *Payton v. New York,* 445 U.S. 573, 583 (1980). Among those exceptions are situations in which (1) the police have probable cause that a crime is being committed in a home and there are exigent circumstances that justify a warrantless entry into the home, (2) the police reasonably believe that there is a need to assist persons inside a home who are seriously injured or threatened with such injury, (3) the police have a reasonable, articulable suspicion that a home harbors an individual posing a danger to those on the scene which permits the police to conduct a quick and limited search of the premises for the safety of the officers and others present at the

scene; (4) a search is conducted incident to a lawful arrest; or (5) other exigent circumstances are present that justify a warrantless entry into a residence. *United States v. Brown*, 230 F. Supp. 3d 513, 522 (M.D. La. 2017).

For the first exception, the Government must show both probable cause and exigent circumstances. *United States v. Lewis*, 381 F. App'x 376, 380 (5th Cir. 2010); *see also Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."); *United States v. Newman*, 472 F.3d 233, 236 (5th Cir. 2006) ("A warrantless, unconsented entry into a person's home is presumptively unreasonable under the Fourth Amendment unless supported by probable cause that contraband is inside or that an illegal act is taking place and conducted pursuant to exigent circumstances."); *United States v. Santiago,* 410 F.3d 193, 198 (5th Cir. 2005) ("A warrantless entry into a dwelling is presumptively unreasonable unless consent is given or probable cause and exigent circumstances justify the encroachment."). The second exception, threatened injury, is also a type of exigent circumstance and due to its emergent nature, a showing of probable cause is not required—only an objectively reasonable basis. *See United States v. Cox*, No. SA-16-CR-741-XR, 2017 WL 5588192, at *4 (W.D. Tex. Nov. 20, 2017) (collecting cases) ("This Court's understanding of *Kentucky v. King*, *supra* and *Toussaint*, *supra* indicates that any requirement of probable cause in the emergency aid context has been abolished.").

The original entry into the home by the officers in this case was done without a warrant. Therefore, the Government has the burden of proving the existence of an exigent circumstance by a preponderance of the evidence. *United States v. Rodea*, 102 F.3d 1401, 1404 (5th Cir. 1996); *see also United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) ("Where there is no

5

warrant, the government bears the burden of establishing by a preponderance of the evidence that the challenged search and/or seizure was valid."). To meet this burden, the Government argues that there was an ongoing crime of assault occurring and that Balka was injured and in danger. As such, the undersigned will evaluate probable cause and any exigent circumstances.

  A. <u>Probable Cause</u>

Probable cause is a commonsense standard requiring a showing of "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Poullard v. Jones*, 596 F. Supp. 3d 729, 736–37 (N.D. Tex. 2022). A court should look to the "totality of the circumstances" under a reasonable officer standard. *Id.*

Courts have found that evidence of a domestic disturbance satisfies this showing. In *Drake,* the officers responded to a domestic disturbance call, heard shouting, and saw a woman crying and bruised through the open front door. *Drake v. Keith*, No. 13-2405, 2014 WL 1240223, at *8 (W.D. La. Feb. 14, 2014), *R. & R. adopted as modified o.g.*, 2014 WL 1239267 (W.D. La. Mar. 25, 2014). The court found that the officers' entry was reasonable and lawful. *Id*.

In this case, there was evidence of probable cause of a crime inside the Defendant's home—assault.[3] Upon arrival, Balka was in the doorway of the home disheveled with visible blood on her hands and the parties were arguing while the Defendant stated that he was trying to get in the house, but she was denying him entrance. Balka stated that they had an altercation and he cut her hair and broke her nails. She also stated that he assaulted her. In addition, the 911 call indicated an earlier domestic disturbance between the Defendant and his ex-girlfriend, Balka, in his vehicle where he reported that she was mad and "trying to do some damage to me." After

---

[3] At the hearing, the evidence revealed that at least some of the assaultive conduct occurred in the front yard prior to his arrival. However, that fact was not known by Officer Allen prior to his entry into the home.

speaking with the parties, the Defendant was arrested for Assault Family Violence. Given these circumstances, the court finds probable cause of a crime existed.

      B.      <u>Exigent Circumstances/Emergency Aid Exception</u>

The exigent circumstances exception applies where law enforcement officers reasonably fear for their safety, destruction of evidence is imminent, if firearms are present, or if officers need to assist persons who are seriously injured or threatened with serious injury. *Flores Castaneda,* 384 F. App'x at 367. The threat of serious injury, as an exigent circumstance, is sometimes referred to as the "emergency aid exception," which requires an objectively reasonable basis for believing that a person within the house is in need of immediate aid. *United States v. Jackson*, No. 24-30233, 2025 WL 2806743, at *3 (5th Cir. Oct. 2, 2025).

The determination of exigent circumstances is a factual one looking at the totality of the circumstances. *United States v. Blount*, 123 F.3d 831, 837–38 (5th Cir. 1997). "Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may justify a warrantless entry." *Blount*, 123 F.3d at 837 (5th Cir. 1997). Further, due to the nature of emergencies, the exception is "case specific." *Lange v. California*, 594 U.S. 295, 302 (2021).

The court should look at the reasonableness of the officers' investigative tactics leading up to the warrantless entry. *Blount*, 123 F.3d at 837–38. An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)) (finding the officer's subjective motivation is irrelevant). If "'reasonable minds may differ, the courts should not

7

second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation." *Blount*, 123 F.3d at 838.

"Domestic disputes often involve high emotions and can quickly escalate to violence, even from a situation that is seemingly calm at officers' arrival." *United States v. Jackson*, No. 24-30233, 2025 WL 2806743, at *3 (5th Cir. Oct. 2, 2025) (quoting *United States v. Rodriguez*, 601 F.3d 402, 408 (5th Cir. 2010)); *see also Tierney v. Davidson*, 133 F.3d 189, 197 (2d Cir. 1998) ("Courts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger.").

For example, in *Jackson*, the Fifth Circuit just recently analyzed a warrantless entry stemming from a domestic disturbance 911 call. *Jackson*, 2025 WL 2806743, at *3. In that case, the officers arrived and a bystander reported that "he was beating her." *Id.* at *1. The front door was open, and the couple was arguing. *Id.* The officers entered the home and attempted to separate the couple. *Id.* The Defendant argued that the officers did not witness a physical altercation and could see that his wife was not injured. *Id.* at *3. Nonetheless, the court held that the officers had an objectively reasonable basis for believing that the wife was in danger and needed immediate aid noting that these situations can quickly escalate citing to the *Stuart* case, which found that nothing requires the officers to wait until another blow is rendered before entering. *Id.* at *4 (citing *Stuart*, 547 U.S. at 406).

Similarly, in *Drake,* a 911 domestic disturbance call was made, and officers found a couple arguing in the home. *Drake*, 2014 WL 1240223, at *1. The defendant answered the door, and the officers saw a woman inside crying with bruises, scratches, and messy hair so they asked

8

the defendant to step outside, which he did. *Id.* The officers then entered the home to check on the woman over the defendant's objections to entering the home. *Id.* The court found that the warrantless entry was reasonable and lawful as she appeared to require immediate medical attention. *Id.* at *8.

In this case, the evidence included a 911 call made by the Defendant himself, regarding a domestic disturbance with his ex-girlfriend, Balka, in his vehicle. He asked for officer intervention. Upon arrival, the Defendant and Balka were back at home with the Defendant standing outside close to the side entrance and Balka just inside the home behind a screen door, which she opened once Officer Allen neared their location. They continued to argue, and the Defendant resisted the officers' requests to move away from Balka so they could hear both sides of the story. Balka stated that she was assaulted, and she had visible blood on her hands. Eventually, after asking the Defendant five times to step over with his partner away from the home and the Defendant refusing each time, Officer Allen walked towards Balka, who was still in the side door entry to the house with the screen door open and said, "let's walk inside" to which Balka replied, "go ahead." The undersigned finds that the totality of the circumstances supports an objectively reasonable basis that Balka needed immediate aid in separating her from the Defendant to protect against additional harm and in assessing her need for medical attention. As such, the Government has met its burden in showing an exigent circumstance justifying the warrantless entry into the Defendant's home. The undersigned further finds that the subsequent search warrant was supported by probable cause as discussed herein, including the illegal narcotics seen in plain view and Balka's statements regarding the Defendant's illegal drug distribution activity.

.

## IV. RECOMMENDATION

For the reasons discussed herein, the undersigned recommends that the Defendant's Motion to Suppress (doc. #19) should be denied.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(2); E.D. TEX. LOCAL R. CR-59(c). A party who objects to this Report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 22nd day of December, 2025.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE

10